UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:10-CR-32-1-CHB-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| MICHELLE T. ROSS ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Michelle T. Ross. *See* D.E. 45 at 2. District Judge Boom entered a judgment against Defendant on June 18, 2022, following a plea of guilty to a violation of 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine). D.E. 43. Defendant was originally sentenced to twenty-two months of imprisonment and a three-year term of supervised release. *Id.* at 2–3.

Defendant was released from custody to begin service of her three-year term of supervised release on April 8, 2021.

On February 6, 2024, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings and secured an arrest warrant on February 6, 2024. Defendant was arrested on May 29, 2024. Violation #1 stems from a Kentucky charge of possession of methamphetamine on February 2, 2024. Defendant eventually pled guilty to the charged conduct (described below). This is a Grade B violation. The Report was later supplemented with Addenda on both April 10, 2024, and May 30, 2024. The April 10, 2024 Addendum charges a second violation arising from an April 3, 2024, charge of promoting contraband. The basis for that charge was that Defendant was seen handling a piece of paper that

was folded up and had four square orange strips with the number eight on those strips while she was being held at Knox County Detention Center. That state charge was subsequently dismissed, and the United States moved to dismiss the related federal violation allegation during the final hearing. The second charged violation is a Grade B violation. The May 30, 2024 Addendum indicates how Defendant's charges in state court were resolved.

I.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on May 30, 2024. D.E. 48. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on June 20, 2024, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 50. Defendant waived a formal hearing and stipulated to violation # 1 as set forth in the Report. *Id.* The Court found Defendant to be competent and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that she engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2). The factual basis for the violation is described as follows in the uniform citation issued on February 2, 2024:

2

> Traffic stop initiated on vehicle, vehicle crossed center line several times. After speaking with operator, it was verified that the female passenger had an active warrant. Upon speaking with female she was ask[ed] if anything in the vehicle was illegal, she stated no[,] you can look. She was ask[ed] if it was ok if deputies searched vehicle. Michelle stated yes I do not care if you search. Michelle exited vehicle along with her dog. Deputies located a black purse, and before looking in it[,] ask[ed] Michelle if it was her purse, she stated yes its mine. Inside the left pocket of purse several crystal like substances were located, that appeared to be methamphetamine. When Michelle looked at them she stated oh I did not know those [were] in there. Michelle was arrested for possession of methamphetamine. Michelle then stated I have more on me because she never wanted to be charged with promoting contraband. Michelle stated she had already received that charge several times. Michelle then retrieved a clear sandwich bag containing approx. 9.2 grams.

During the final hearing, Defendant admitted to knowing possessing methamphetamine on her person on February 2, 2024 in violation of her release conditions prohibiting criminal conduct and unlawful possession of a controlled substance.

    The United States argued that Defendant should be sentenced to a term of imprisonment of twelve months, followed by eighteen months of supervised release. In so arguing, the United States relied heavily on Defendant's breach of the Court's trust and her history and characteristics. The United States highlighted Defendant's long history of methamphetamine use. The United States also pointed out that Defendant's violation conduct was similar to the conduct that gave rise to her initial conviction. In addition, the United States thought that sentence was sufficient but no greater than necessary to address the relevant factors due to the amount of methamphetamine possessed by Defendant. The United States did acknowledge that Defendant had been succeeding on supervised release for some time.

    The Court raised the issue of whether Judge Boom's initial sentence should be taken into account, in light of the downward variance she received. The United States indicated that, in light of Defendant's initial success on supervised release, such a variance would not be warranted in its view.

Defense counsel argued that a sentence of eight months, with four months of that time being in home incarceration and the other four months being in a Federal Bureau of Prisons facility, was sufficient but no greater than necessary to address the relevant factors. Defense counsel also thought that further supervised release was unwarranted. Defense counsel stressed that Defendant had accepted responsibility for her criminal conduct. Defense counsel also explained that fact should be weighed in Defendant's favor. Further, defense counsel stressed other mitigating factors, including that she was only two months shy of completing her term of supervised release when she violated the terms of her supervised release. Defense counsel pointed out that Defendant does not have a history of violence. Defense counsel also informed the Court that, in August 2022, Defendant's stepfather passed away. Further, her father died in early 2023. Those two events, defense counsel explained, sent Defendant spiraling. Defense counsel explained that Defendant felt particularly guilty because she was incarcerated when her father and stepfather's health began declining. That guilt caused Defendant to begin associating with the wrong crowd, which led her to engage in the conduct that forms the basis for these proceedings. Defense counsel conveyed that Defendant will have a stable housing situation upon her release from incarceration, as her mother has agreed to let Defendant live with her. Further, defense counsel stressed that Defendant has a support system in place, pointing out that Defendant is engaged to be married.

Defendant briefly allocuted, apologizing for her breach of the Court's trust and taking responsibility for her actions.

II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine) is a Class C felony.

*See* 18 U.S.C.A. § 3559(a)(4).  For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment.  *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted).  The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."  U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade B violation with respect to Violation # 1.  Given Defendant's criminal history category of III (the category at the time of her conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months.  *See* U.S.S.G. § 7B1.4(a).  Both parties agreed to this calculation of the range.  Consistent with the guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence.  *E.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

Congress does ***mandate*** revocation in a case of this nature.  By statute, the Court must revoke Defendant's release because she possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1).  The only exception would be if a suitable treatment option, or Defendant's record of

5

involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release . . . unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

The presence of a Grade B violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violation. Neither side argued for a non-revocation penalty.

### III.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends that Defendant's supervision be revoked and that she be sentenced to a ten-month term of imprisonment followed by two years of supervised release.

First, the Court considers the nature and circumstances of the underlying offense. Defendant's initial conviction was for conspiracy to manufacture methamphetamine. Her violation conduct was possession of methamphetamine. While manufacturing methamphetamine and possessing methamphetamine are not the same, the two crimes are related. Thus, this factor supports a lengthier sentence.

The Court next considers Defendant's history and characteristics. Defendant has a relatively lengthy criminal history, which supports a longer term of incarceration. Further, Defendant's violation occurred at the end of her term of supervised release, which is itself

troubling. Nothing in the record reveals an understandable or predictable reason why Defendant chose to violate the terms of her supervised release, which suggests that she needs continued oversight. While Defendant complied with the terms of her supervised release for thirty-four months, this fact does not mitigate the severity of her violation in light of Judge Boom's variance from Defendant's Guidelines-recommended sentence of thirty to thirty-seven months down to a custodial term of twenty-two months.

Further, Defendant certainly knew the consequences of a violation. Defendant failed to report to the probation office in 2004 after having been sentenced by the Pulaski Circuit Court to pre-trial diversion for possession of a controlled substance in the first degree. That failure resulted in her receiving a sentence of three years of probation for having committed that crime. That Defendant previously failed to comply with court-mandated conditions supports a lengthier term of imprisonment. In addition, the quantity of drugs possessed by Defendant here was large. Possessing such a large quantity of drugs must strongly be discouraged, considering the serious harm that drug use inflicts on the community at large. This also counsels a more significant term of imprisonment.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence, including its recommendation of an additional term of supervision. Defendant chose to violate the law, and that choice must be adequately addressed by the term of imprisonment she is required to serve. Further, possessing unlawful drugs, particularly methamphetamine, must be dealt with harshly to demonstrate to the community that such possession is unacceptable, and to deter others from choosing the drug life.

The Court must also consider whether defendant needs any education, training, or treatment. Here, the Court perceives no obvious need for education, training, or treatment. She needs continued supervision concerning drug-related conduct, but no specific form of treatment is supported by the record.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. Here, the Guidelines-range sentence furthers this goal of ensuring that similarly-situated defendants receive like sentences.

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. Here, Defendant's violation conduct indicates that an additional term of supervised release is warranted, considering her sudden failure to comply with the terms of her supervised release.

Further, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's decision to possess a large quantity of methamphetamine is a serious breach of the Court's trust. That serious breach of the Court's trust means that a lengthier prison sentence is warranted. Considering the severity of the breach of that trust, a split-sentence would be insufficient to address Defendant's violation of the terms of her supervised release.

8

In short, ten months of imprisonment followed by twelve months of supervised release is sufficient but no greater than necessary to address the 18 U.S.C. § 3553(a) factors that are imported into the § 3583(e) analysis.

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of violation #1;

(2) That violation # 2be dismissed;

(3) Revocation and imprisonment for a term of 10 months;

(4) Twelve months of supervised release under the conditions contained in Defendant's prior judgment (D.E. 43).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 50.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on District Judge Boom's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of June, 2024.



Signed By:
**_Hanly A. Ingram_**
**United States Magistrate Judge**